All right, you're you're you're you're you're dishonorable appellate court of the Second District is back in session. Pursuant to adjournment, the Honorable Kathleen Zinoff. Thank you. Please be seated. Your honor is the second case in the morning call to 11 or 5 to 5. People in the state of Illinois versus Trayvon are paying on behalf of the watch. Mr Darren Miller on behalf of the defendant. May please the court counsel Darren Miller on behalf of the defendant to climb fame. Your honors. This case involves only one issue. Whether the defendant was proven guilty behind a reasonable doubt of attempt residential burglary. He was also found guilty of resisting. However, that's not being on appeal and he was found not guilty of criminal damage to property. I think it's important to know what this case is not about as much as what it is about. What this case is not about is whether the state proved Mr Fane guilty of attempt residential burglary on an accountability theory. Apparently the state had accountability jury instructions drafted. Defense counsel objected. I'm not certain if it was on the record the basis of the ejection or why, but the state withdrew their instructions. So the jury was not instructed on accountability. So the sole issue here is whether Mr Fane was proven guilty beyond a reasonable doubt of attempt. Residential burglary is the principle. In other words, did he have the specific intent to actually enter the house with the intent to commit a theft? Um, and did he take a substantial step to accomplishing that task? Now, if you look at the evidence, it's it's very weak and it certainly does not support a conviction. It's obviously a circumstance, correct? Correct. Well, in most of it, yes. Um, essentially, the, uh, the owner of the home, Cynthia Barola, she was sleeping. She heard, I believe, two or three banging noises on the door to her back door, and her back door was to, um, led to a fenced backyard. Uh, she turned on the light. Uh, she went downstairs. She saw no one. The banging stopped when the lights came on. The house was otherwise dark. She then the noise stopped. So is it? Is there any question that if the jury believed there was an intruder that damaged the back door, that there was at a minimum sufficient proof for a jury to conclude that someone tried to gain unlawful entry into the home? Well, someone or Mr Fane? No, no, no, no, someone clearly was sufficient evidence to conclude that someone tried to gain entry by kicking in or punching in. The door had to be replaced. It was $650 worth of damage, a pretty significant amount of damage. Right? So wouldn't it be a reasonable inference to conclude that based upon the darkness of the home that these whoever these people were or this person was, they were intruders who were attempting to gain entry so they could leave with personal effects inside the home. That would be a reasonable inference. It could be. So if you look under child, you need to have the substantial step. And obviously under child, you no longer need to actually kick open the door, which would be the last step before an actual birth. So that the state at least met those threshold requirements to make the inferences. The issue is identity of this individual as the principal offender, correct? Well, yeah, that's a substantial step. Arguing is probably not going to be your strongest. Well, I mean, it's a substantial step as to whether he took a substantial step to be the principal offender. He exactly. So let's look at that for a minute. Why do you say what was the substantial step here? What's the act that we're looking at? The substantial step was? Well, my argument is there was no substantial step. Okay, that I mean, for example, if he would on the hose reel and perhaps there was even identification of them, then maybe there could be a reasonable inference that he actually intended himself to go inside the house. But so why isn't the footprint on the real enough? Well, because you have a fenced backyard. Um, there's a footprint on the hose reel. There's no footprints inside the fenced backyard. Um, so and you had the officer. I believe it was, um, the front of him and he fled. Well, no, that's not. Okay, the officer saw him walking with one other person. He confronted him. He did not flee. Um, what happened was after he was arrested, then he fled. Michael, the other officer came up and said, Let me look at your shoes. Made the comment. His shoes are a match. And then he tried to flee. Well, he fled after he was placed under arrest. So why isn't that? Yes. Why isn't all of that enough then? Well, because there's just simply insufficient evidence that he either took a substantial step toward, um, accomplishing a residential burglary or that he had the requisite specific intent to actually enter the home. Um, how do you find if somebody's kicking in a door at night? Any rational prior effect can't find that that's an attempt to gain a level entry into the building. But let's assume let's assume that there were people in the yard and they were trying clearly committing an attempt residential burglary. And let's also assume that even Mr Fane happened to be standing on the hose reel is a lookout. Um, even if that's the case, he's still not guilty as the principal, which is how he was. That's what I'm getting confused about here was your argument. I mean, if you're gonna, you know, go all in and try to kick in the door doesn't indicate a substantial step. I think that's problematic. No, I'm not all in on that. I'm all in on the steps that he took. Isn't it enough as a principal to be convicted of a 10th residential burglary? If you are there and you're there for the purpose of the to begin, even if he's not the person kicking in the door, he's responsible for his own conduct as a principal in committing that step towards the burglary itself. It doesn't have to be just the kicking in. It could be any substantial step, correct? Yeah, I mean, you don't need specifically the kicking in a door. It has to be a substantial step. It could be something less than that. But obviously, the less it is, the more difficult it is to present. We have his footprint, and we have the fact that when confronted one is with his footprint, albeit after the arrest, he fled. Why isn't that enough? Well, again, all you have is a footprint outside of a fenced yard. Let's assume, let's assume that that his fleeing was because of a guilty state of mind. If he was an accomplice, and if you stand on that hose reel as an accomplice, he's still, he's not guilty as a principal, which is how he was tried and convicted. Again, as I stated... Your argument is, hey, the state proved he's in the area, but they didn't prove he was ever even inside the fence, let alone hit the door. Right. Is that what you're saying? You know, and maybe if they would have charged him as an accomplice, I still think it's problematic even there, but having charged him as a principal, it clearly, it's insufficient evidence. Do you think this, was there a mistake by the defense in calling his associate who was impeached? I'm confusing the second guess, I guess. The jury looks at all the evidence presented by both the state and the defense, and the defense alibi kind of falls apart. You look at the whole picture, not just... Well, I don't know that it fell apart. I mean, I think they knew that going into it, that he had changed, that he had changed his story, and I think, you know, a rational jury could have believed him, I guess, but they didn't, apparently, so... Is flight in a circumstantial case enough? No, flight alone is not enough, and again, I think this is not flight in the sense that he saw the police and he started running. There's just as much evidence that the flight was just the result of not wanting to go to jail, rightly or wrongfully accused, as it was a guilty state of mind. And this is a common shoe pattern. The shoe that he was seen in isn't... Correct, and the only reason that's not being challenged, I mean, I looked at it in the light most favorable to the state, and so I've given the benefit of the doubt that the rational jury could have believed that the officer did not track the footprints, although, you know, that's different than me really conceding it, because I also think a rational jury could have found that the officer could not track all those footprints throughout the snow to where he happened to be standing a few blocks away, yet could not find a single footprint in the backyard. You're right, a rational jury probably could have looked at this one of two ways, but, you know, when you're saying that any, quote-unquote, rational juror could have found the elements of the crime beyond a reasonable doubt, that's a fairly significant hurdle to overcome, isn't it? Well, normally, but not here it isn't. I mean, I think it's pretty clear that the state failed to meet their burden to prove that he's guilty as a principal. Even if the state established identity, they proved identity sufficient, where's the intent to commit a theft? Where's Mr. Fain's intent? Right. Did they prove there's no burglary tools, there's no proceeds from other offenses? No, I mean, that's exactly correct, he didn't confess, there's no burglary tools. It was, I believe, at even a time like 5 or 6 o'clock at night, it wasn't even until 2 or 3 in the morning. And, in fact, if you really look at it, there's not even, I mean, I guess if it was his footprint, he could have come along there either before or after then. The identification, the neighbor, Mr. Archer, never identified the defendant as being there, and he gave a description as a man wearing a hood, or three or four people wearing a hood, and the defendant didn't have a hood on. He had a cap. He said he had a cap. Yeah, he had some type of a cap on. So, it's possible that he came there before or after, and, you know, mere probabilities are not enough. They had to prove him guilty beyond a reasonable doubt, and even if it's possible or probable he was involved, you know, I don't think there's even enough for an accountability. But certainly, as a principal, they did not prove beyond a reasonable doubt that he had a specific intent to actually enter the home, not one of the other people entering, but he actually entering the home. And he did not take a substantial step toward that, just if nothing else, because they didn't prove he had the intent to do it. So, I don't really have a whole lot more to say at this point except to rebuttal, so unless there are more questions, I'd ask that you reverse Mr. Payne's conviction. Thank you. Ms. Coles? Good morning. May it please the Court? Catherine Coles on behalf of the people. When viewing the evidence in the light most favorable to the prosecution, it is evident the defendant was proved beyond a reasonable doubt of attempt to residential burglary. This is supported by key facts of the record. First, the footprint evidence shows that the defendant was in the backyard, and this is shown by the garden hose reel. His footprint was on top of the garden hose reel. But that wasn't in the backyard of the victim. No, it was not, but it was next to a fence going into the backyard, and his footprint was faced towards the backyard, showing that he had hoisted himself over the fence, a reasonable fact finder could have found. And this is the only evidence that showed any of the four people in the backyard, since there was no usable footprints in the backyard. And since the neighbor never saw anyone specifically in the backyard. And so this shows that the defendant was the perpetrator of the kicking in the door. It shows he's in the area. How does it show he was kicking in the door? He was kicking in the door. How does it show? Because he's the only one in the back, the only evidence that he was, him in the backyard, and the door was kicked in. There's an inference. There's an inference, yes. Because the footprint was pointed a certain way, then you're saying that there's a strong inference that he was in the backyard because his footprint was on a reel on the other side of the fence facing in a particular direction? Correct, and the reel was around a foot and a half off the ground, and the fence was around waist-length height, and this shows that this was used to get over the fence. However, while people were preparing for the oral argument, the people noticed an instructive case cited by the defendant, People v. Giles, and this case talks about how attempts can be upheld on evidence of reconnoitering, of casing. And in this case, there is evidence that the defendant and the 300 other individuals were casing this residence. What specific evidence is there that this defendant was casing the residence? Well, the footprint on the garden hose reel and the footprints that led from the house to the defendant, in addition to the testimony by Mr. Archer, the neighbor. Mr. Archer testified that he saw four individuals in between his house and Ms. Arrola's house, and that these four individuals disappeared between the houses. But he didn't identify the defendant, did he? No, he did not. And he didn't describe his clothing either, did he? He did describe the defendant's clothing similar but not the same. He said at one point two more came out, correct? He said the four of them disappeared between the houses. The four of them came back out, had a conversation. Then three of them went back and disappeared between the houses while one stayed behind. And this is evidence that they were casing and deciding to rob Ms. Arrola's house. Now, when the defendant was found by the police, he was not with three other people, was he? No, he was with one other person. You say this is evidence that they were going to rob Ms. Arrola's house. How do you reach that conclusion that just individuals outside a home are going to, quote, unquote, rob the house? Sure, Your Honor. When you couple that with the door being kicked in and the evidence that this all happened within moments of time, around 6.30, it was dark out. It was snowing. These footprints are fresh. And the evidence that the officers arrived at the scene immediately found the defendant very close to the house, that one officer found him very close to the house while the other officer was analyzing these footprints, unable to use any in the backyard but found footprints that led directly to the defendant and his friend. And the shoe on his friend was not the circular Nike swoosh shoe that was on the garden hose reel. And when you look at all that in addition to the defendant's flight from the officer after the second officer arrived and said, may I see your shoe, this shows that the defendant... What is your assessment of the strength of flight evidence? Is there a big distinguishing factor? The opposing counsel says, look, this is really not flight in the traditional sense, that as soon as the officers attempt to accost the defendant, he takes off running. He's saying he's already under arrest, so that weakens the strength of the flight evidence in the context of this case. What's your reaction to that? I think when looking at the totality of the circumstance of the case and knowing that the defendant, that there's freshly fallen snow and that when an officer approached and said, may I see your shoe, the defendant gets nervous and then tells him and he wants to place him under arrest and he flees away. I think the defendant realized he had been caught. He wasn't really under arrest. He was just told he was going to be placed under arrest, then he took off. Correct. And that's not conduct that's consistent with an innocent person? Correct. Was there an alternative theory as to why he was fleeing other than the fact that he had been associated with the attempted break-in? No. Any evidence of warrants off for his arrest or anything like that? Not that I recall from the record, Your Honor. But anyway, there's no other explanation for that? No, Your Honor. It's your position that it's enough to show intent to commit a theft by just the mere attempt to entry into a home where there's personal effects? That's enough to infer intent to commit a theft? Yes. How old was the victim? I do not recall. I believe he was young. The person he was with was 17. No, the victim. I'm sorry, the victim. I don't recall, Your Honor, from the record, but she worked the night shift and she was sleeping. The house was dark. This was 6.30 on a winter night, so it was pitch dark out. The emphasis the defendant places on the fact that this isn't a time a burglary would happen is not relevant, considering that that is what happened or attempted to happen. A dark house, that time of the winter, you would assume that if people are home, there's going to be lights on? Correct. And the damage to the door shows that the defendant was trying to enter this house because there was damage to this lock and there was approximately $600 of damage. And causing that amount of noise would infer that they probably thought no one was home? Correct, and when the light turned on, that may have been what scared them to run off. And so within minutes, the police arrived and found the defendant in the area. If there aren't any further questions. Thank you. Thank you. Mr. Miller? It's just a couple of brief points regarding the footprint on the hose reel. I believe counsel argued that that showed somehow that the defendant had the specific intent to actually enter the home. But again, there is no footprints inside. No footprints at all were usable. Is it fair to clarify? Can you characterize the evidence that there were no footprints at all in the backyard? I think it is. If you're going to believe the officer's testimony that somehow he could track footprints for blocks, if you're going to believe that, then to find that he couldn't find a single footprint anywhere. And if you look at the evidence, if he had entered the backyard, there was only one footprint on the hose reel. Is this hose reel, is it above the ground? Above the ground? Yes. So it would indicate somebody stepped onto the hose reel. Right. But if he stepped on it to propel himself over the fence, he would have landed and had a couple of footsteps there. And anybody would have done that. Somebody, you're not disputing somebody who's made, the victim didn't concoct the story, somebody tried to get in the house, right? Right. Well, I don't know if someone's trying to get in the house, but someone... So whether or not they left footprints, somebody was in there. Mr. Miller, the argument that you're making is essentially asking us to re-weigh the evidence. Well, I'm asking you to apply the law to the evidence in light of the state rules. Tell us how no reasonable juror could conclude that based upon the damaged door, the print, which is consistent with one of the prints, whether there were multiple sets of footprints, there was only one set of footprints or print in the backyard. There were not multiple prints, correct? My recollection of the testimony is there were multiple prints all over the place, and that was supposedly one of the reasons why they couldn't make out the prints. But one of my points was that apparently his was the only footprint on the hose. If you're going to believe that's his footprint, no one else apparently entered that particular area. If you're going to assume that he went over the fence, there would be his footprints right immediately on the other side of that fence, too, and there's none of that. You understand my point. The question is there's clearly enough evidence to conclude that someone was trying to gain entry into that home and that there was a group of people who were probably, and the jury could infer, were casing the home, correct? Yeah. The defendant is stopped. You didn't challenge the stop. There was no motion to suppress based upon an improper Terry stop, correct? No. The stop was proper, correct? Yeah. Weichel arrives, sees the defendant's shoe. It's a match where he says he conveys that to his fellow officer. The defendant's told he's under arrest, and then he tries to flee. But that's all. It's pure speculation. Again, this is not a case of him being guilty as an accessory. Those things all happen, though, correct? Yeah. I don't know if they happen or not, but we'll take it in the light and most favorable to the state as you have to. But take it all. I'm saying you're not relaying the evidence. Take the evidence in the light and most favorable to the state. They did not meet their burden. They'd have a better argument if they had given accountability instructions. They don't explain why they issued the accountability instructions. Isn't connoitering enough? No. If you look at Giles, first of all, Giles makes it clear that every case is to be determined on its own particular facts. And if you look at Giles, he had reconnoitering plus burglary tools. He was trying to flashlight into the home. He had latex gloves. Why would anyone be walking around with latex gloves? It was 3.30 in the morning. It was raining. And he was also peering into the car. That's completely different than just hanging around a place. And, again, there was no issue in Giles as to accountability not being an issue. And here that's a crucial fact is that they withdrew their accountability instructions. So they had to prove beyond a reasonable doubt that he's guilty as the principal, that he specifically intended to actually enter the home, that he himself was going to be the one to go inside. He himself had the intent to go inside with the intent to steal. Your argument is that you cannot be found guilty of attempt to resident for burglary based upon being present outside the home, knowing someone else is going to gain entry so you can then enter and take property. But there was zero evidence that he was going to enter and take property. So that's not my argument. I mean, my argument is that they have to find beyond a reasonable doubt. And I would say that that's not the case. So, again, I'd ask, unless there are any further questions, that you reverse Mr. Fain's conviction. Thank you. Thank you, counsel. The court will take the matter under advisement and render a decision in due course. We stand in recess until the next case. Thank you.